UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

**JOSEPH GALLAGHER,** individually and on behalf of
other similar situated

                              Plaintiff,

                                    v.

**PEPE AUTO GROUP, MERCEDES BENZ OF NEW
ROCHELLE, JOSEPH PEPE,** individually,
**GENE PEPE,** individually, **ROBERT PEPE,**
individually, and **SALVATORE  PEPE,** individually,

                                Defendants.

-------------------------------------------------------------------X

**CLASS ACTION COMPLAINT**

COMPLAINT FOR VIOLATION
OF  DISCRIMINATION LAWS

**DEMAND FOR JURY TRIAL**

Plaintiff, Joseph Gallagher (herein referred to as "Gallagher"), individually and on behalf of others similarly situated, through its counsel, Aboyoun, Heller & Dobbs, LLC, by way of Complaint against Defendants, Pepe Auto Group (hereinafter referred to as "Pepe Auto Group"), Mercedes Benz of New Rochelle (hereinafter referred to as "Mercedes"), Joseph Pepe, individually (herein referred to as "Joe") Gene Pepe, individually (herein referred to as "Gene"), Robert Pepe, individually (herein referred to as "Robert"), and Salvatore Pepe, individually (herein referred to as "Sal") (collectively herein referred to as "Pepe") says:

## JURISDICTION AND VENUE

1.     The claims asserted herein arise under and pursuant to 29 U.S.C. §621 *et seq.*, known as the Older Workers Benefit Protection Act.

2.   This Court has jurisdiction of this action pursuant to section §626(c) of this act and 28 U.S.C. §1331.

3.   Venue is properly laid in this District pursuant to §626(c) of this act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and the Defendant's maintain their principal; place of business in this District.

**PARTIES**

4.   Plaintiff, Joseph Gallagher, is a resident of Tuxedo Park, New York.

5.   Upon information and belief, Defendant, Pepe Auto Group is located at 50 Bank Street, White Plains, New York 10606

6.   Upon information and belief, Defendant, Mercedes Benz of New Rochelle is located at 77 East Main Street, New Rochelle, New York 10801.

7.   Upon information and belief, Defendant, Joseph Pepe is an owner and officer of Mercedes Benz of New Rochelle.

8.   Upon information and belief, Defendant, Gene Pepe is an owner and officer of Mercedes Benz of New Rochelle.

9.   Upon information and belief, Defendant, Robert Pepe is an owner and officer of Mercedes Benz of New Rochelle.

10.   Upon information and belief, Defendant, Salvatore Pepe is an owner and officer of Mercedes Benz of New Rochelle.

**FACTUAL ALLEGATIONS**

11.   For more than Thirty (30) years, Joseph Gallagher has enjoyed a successful career in the automobile industry.

12. Prior to July 2015, Joseph Gallagher worked for Mercedes Benz, USA for 25 years.

13. His employment with Mercedes Benz, USA ended in July of 2015, when by way of false promises and misrepresentations, he was lured away by Joe Pepe, the COO of Pepe Auto Group, to accept a position of General Manager at Pepe's, Mercedes- Benz of New Rochelle store. Pepe stated that he sought out Gallagher due to his experience with Mercedes Benz, and that Pepe wanted to minimize the employee turnover that has plagued the store since its existence.

14. Pepe offered Gallagher a job working as his general manager for his New Rochelle Mercedes Benz store (hereinafter referred to as "MBNR").

15. In July of 2015, Gallagher entered into a three year employment agreement (hereinafter referred to as the "Agreement") with Joe Pepe and MBNR.

16. Throughout his employment with MBNR he was a loyal and hardworking employee.

17. Shortly after the two year mark of Gallagher's employment, without any warning, Pepe called Gallagher into his office to tell him that "it just isn't working out."

18. Pepe fired Gallagher that day without any reason, justification or prior warning.

19. Gallagher never received any written performance review, let alone one that identified any areas of unsatisfactory performance or recommendations of improvements that he could undertake.

20. To the contrary, Gallagher always received praise for his performance by Pepe and MBNR.

21. In fact, Gallagher was integral in removing MBNR from Mercedes Benz's Dealer Performance Review Program. Gallagher markedly improved employee morale, which was established through an annual dealer employee survey conducted by Mercedes Benz

USA.

22. Furthermore, Gallagher never received any written notice articulating the reasons for his termination pursuant to Section 8.02 of the Agreement.

23. Gallagher was likewise not provided a reasonable opportunity to cure any alleged breaches of the Agreement.

24. Gallagher was terminated because of his age.

25. Contemporaneous with Pepe firing Gallagher, Pepe presented and forced Gallagher to sign a general release in favor of Pepe and his Mercedes Benz of New Rochelle store.

26. Pepe misrepresented the terms of the general release to Gallagher in order to wrongfully induce him to execute the document.

27. Gallagher being blindsided by Pepe, and unaware of his rights, signed the general release presented by Pepe and MBNR.

28. Thereafter, Gallagher forwarded a letter (a copy annexed hereto as Exhibit A) to Pepe and MBNR rejecting the general release for reasons, which include that it was not proper under the Older Workers Benefit Program Act.

29. Gallagher has been discriminated against on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 et seq.

30. Furthermore, upon information and belief, Pepe and MBNR have engaged in this same discrimination with respect to others previously under their employ.

31. The ADEA and NYSHRL provide that it is unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age. See 29 U.S.C.  § 623(a)(l);  N.Y. Exec.

Law§ 296(1)(a);  see  also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000). Claims under the ADEA and NYSHRL are subject to the same analysis. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

32.  Under the Older Workers Benefit Protection Act ("OWBPA"), which is a part of the ADEA, employers must follow a strict timeline to get a valid release of from any involuntary terminations and reductions-in-force. Under the OWBPA, for a release to be valid, the release must be "knowing and voluntary."  At minimum, this means that the release must:

   a)  Be in writing;

   b)  Be written in a manner that the employee would understand;

   c)  Be in plain, clear language that avoids technical jargon and long, complex sentences;

   d)  Not mislead or misinform the employee executing the release;

   e)  Not exaggerate the benefits received by the employee in exchange for signing the release, or the limitations imposed on the employee as a result of signing the release;

   f)  Specifically refer to the ADEA;

   g)  Specifically advise the employee to consult an attorney before signing the release; and

   h)  Not require the employee to waive rights or claims arising after the date the employee signs the release.

33.  Furthermore, The OWBPA requires employers to give employees a specific amount of time to consider the release.  For a single employee, the employee must be given 21 days

to consider the release. The consideration period starts to run from the date of the employer's final offer to the employee.

34. After considering and signing the release, an employee has seven days to change his or her mind and revoke his or her agreement to the release. If these time periods are not specifically included in the release, then the release is unenforceable.

35. Gallagher was not afforded the aforementioned time to review the agreement, and the agreement did not reference the aforementioned time frames.

36. Furthermore, Defendants have unlawfully discriminated against Gallagher, and others, on the basis of their age, in violation of Statutory and common law, including but not limited to the ADEA and the NYSHRL.

37. To establish a prima facie case of age discrimination, a claimant must demonstrate that: 1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003).

38. Gallagher can establish a prima facie claim of age discrimination and breach of the ADEA. First, he is 51 years old. See 29 U.S.C. § 631(a). Second, Gallagher is qualified for his position, as he has enjoyed a successful career in the automobile industry for approximately thirty years. He has received compliments and praise from colleagues and customers, and has received positive performance reviews, awards, and feedback from his superiors. Third, Gallagher was terminated without any prior or progressive discipline or warning. Fourth, upon information and belief, Defendants have stayed true to their history of hiring new employees in their 20s and 30s, whereby Gallagher was replaced by an

employee substantially younger than him.

39. Regardless, "a plaintiff is not required to show that [h]e was replaced by someone outside ofh[is] protected class so long as [h]e has presented some other evidence that gives rise to an inference of discrimination." Morris v. New York City Dep't of Sanitation, 2003 U.S. Dist. LEXIS 5146, 2003 WL 1739009 at *5 (S.D.N.Y. 2003), citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308 (1996).

40. The fact that Gallagher was among the oldest employees at MBNR, and over his employ, Defendants exhibited a pattern and practice of hiring employees in their 20s and 30s, indicates evidence of a prevailing attitude and bias in the workplace against older workers. See Hollander v. American Cyanamid Co., 895 F.2d 80, 84 (2d Cir. 1990)("Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive.").

41. In light of the fact that Gallagher was forced to execute a General Release in favor of Defendants that is in blatant breach of the ADEA by virtue of its failure to 1) specifically refer to ADEA, and 2) specifically advise him to consult with an attorney before signing the release, we believe that Defendants have forced others to execute similar releases in violation of the ADEA.

42. Subsequently, Gallagher obtained new employment with Porsche Cars North America Incorporated (hereinafter referred to as "Porsche").

43. Porsche hired Gallagher as an Area Pre-Owned Manager to oversee the Pre-Owned sales divisions of its Franchisee Dealerships in a certain market area.

44. Under his employment with Porsche, Gallagher had a territory with which he had to visit

and work with certain dealerships.

45. Pepe's Porsche store was part of Gallagher's territory.

46. Gallagher's employment with Porsche was proceeding smoothly and successfully.

47. On February 1, 2018, Gallagher was brought in to see his supervisor and an HR representative for Porsche.

48. Upon information and belief, Pepe called Porsche and stated that Gallagher was no longer welcome at Pepe's Porsche store because he was suing Pepe.

49. Upon information and belief, these statements included but are not limited to telling Porsche that there was pending litigation between the two parties when there was not which would make it seem that Plaintiff lied to Porsche about this fact.

50. No such litigation existed.

51. Upon information and belief, Pepe told Porsche that Gallagher had no integrity and could not be trusted as Porsche's representative.

52. Upon information and belief, Pepe told Porsche that Gallagher made his customers uncomfortable.

53. Upon information and belief, Pepe told Porsche that Gallagher was costing Pepe's dealership business because Gallagher was a poor Pre Owned Manager.

54. Pepe smeared Gallagher's reputation and good name with his new Employer.

55. Pepe made false and injurious statements to Porsche about Gallagher's work ethic, business acumen, integrity, and character.

56. Pepe maliciously made these statements with the purpose of getting Gallagher fired in his position as Porsche's Pre Owned Manager in that geographic area.

57. Porsche terminated Gallagher, that day, without looking into the matter further.

## COLLECTIVE ACTION CLAIMS

58. Gallagher brings certain of his claims as a collective action under 29 U.S.C. §621 et seq., and NY CLS §290 et seq.

59. MBNR generally does not hire or retain for long periods of time older individuals for its Sales and Management level positions. Rather, it generally hires younger individuals.

60. MBNR's culture and practices have distributed the benefits of its enormous success unequally—systematically favoring younger applicants at the expense of their older counterparts. Individuals 55 years of age and older are rarely in sales and management positions at MBNR.

61. MBNR maintains hiring policies and practices for giving preference to younger employees that result in the disproportionate employment of younger applicants.

62. MBNR's unlawful bias against older workers manifests itself in several ways, including but not limited to: (1) a focus on attracting and retaining "Millennials," and (2) a mandatory early retirement policy that requires employees to retire by age 60, or suffer some form of termination. As a result of this bias against older workers, older individuals who are equally or more qualified have been systematically excluded from the career opportunities that are afforded to people who work for MBNR.

63. The underrepresentation of workers over age 55 at MBNR is stark.

64. Not surprisingly, the number of workers 55 years of age and older in entry-level and lower to mid-level positions is stunningly low.

65. MBNR's recruiting and hiring policies, patterns, and/or practices have a disparate impact on applicants 55 years of age or older because they deter applicants 55 years of age or older from applying and disfavor hiring those applicants 55 years of age or older who do apply.

66. These policies, patterns, and/or practices are no accident.

67. Rather, they are part and parcel of MBNR's corporate culture.

68. Pepe Auto Group has intentionally implemented these company-wide policies and practices throughout its dealerships in order to maintain its youthful culture and appearance.

69. MBNR's policies and practices have the effect of deterring prospective applicants ages 55 and older from applying and denying job opportunities to those individuals ages 55 and older who do apply.

70. MBNR provides compliance consulting services and undoubtedly understands the consequences of its own recruitment policies and practices.

71. MBNR is very proud of its inordinately young workforce. In order to continue to attract and maintain "Millennials," MBNR intentionally screens out individuals ages 55 and older who apply for employment and denies them employment opportunities

## COLLECTIVE ACTION ALLEGATIONS

72. Gallagher brings this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) seeking liability-phase injunctive and declaratory relief on behalf of a collective of all applicants and deterred prospective applicants for employment ages 55 and older. Plaintiff also brings this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) for monetary damages and other make-whole relief on behalf of a collective of all applicants and deterred prospective applicants for employment ages 55 and older in the United States at any time from October 18, 2013 through the resolution of this action for claims under the ADEA.

73. Gallagher and other potential members of the collective are similarly situated in that they have all sought and been denied or were deterred from applying for employment at MBNR

by policies and practices that have the purpose and effect of denying them employment opportunities because of their age, or for termination of their employment simply because of their age.

74. There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Notice should be sent to the collective pursuant to 29 U.S.C. §§ 216(b), 626(b).

75. As part of its regular business practice, MBNR has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the ADEA with respect to Plaintiff and the collective.

76. This policy and pattern or practice includes, but is not limited to:

    a) willfully utilizing a biased recruiting system for entry-level accounting hiring that excludes, deters, and discriminates against workers ages 55 and over; and

    b) willfully implementing a termination policy that deters and discriminates against applicants ages 55 and over for employment;

    c) willfully refusing to hire applicants ages 55 and over for employment.

77. MBNR maintained and implemented these policies and practices with the purpose and effect of denying Plaintiff and other members of the collective employment opportunities because of their age.

78. These policies cannot be justified on the basis of reasonable factors other than age.

**<u>FIRST COUNT</u>**
**Violation of the Older Workers Benefit Protection Act**
**29 U.S.C. §621 *et seq*.**

79. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

80. This Claim is brought by Representative Plaintiff on behalf of himself and the collective he represents.

81. Defendants have a pattern and practice of presenting older employees with unlawful release agreements that do not meet the standards required under the Older Workers Benefit Protection Act (OWBPA).  after advising them that they will be terminated from their employment.

82. Defendants provided Plaintiff with a release that did not meet the standards required under the Older Workers Benefit Protection Act (OWBPA).

83. Defendant's general release did not refer to the rights or claims arising under the Age Discrimination in Employment Act (ADEA).

84. Defendant's general release did not advise the employee, in writing, to consult an attorney before accepting the agreement.

85. Defendant's general release did not provide the employee with at least 21 days to consider the offer.

86. Defendant's general release did not give Plaintiff seven days to revoke his signature.

87. Defendant's general release did not include rights and claims that may arise after the date on which the waiver was executed.

88. Defendant's failure to execute a general release which complies with the OWBPA under the ADEA is a violation of Plaintiff's rights and thus, Defendant is liable to Plaintiff for damages.

**<u>SECOND COUNT</u>**
**Unlawful Discriminatory Practices**
**NY CLS §290** *et seq.*

89. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

90. This Claim is brought by Representative Plaintiff on behalf of himself and the collective he represents.

91. Defendant employer discharged Plaintiff from his employment because of his age.

92. In doing this, Defendant has discriminated against Plaintiff and caused him harm

93. Plaintiff's termination, because of his age, was not due to a bona fide occupational qualification which is allowed under the law.

94. Defendants maintain discriminatory policies, patterns, and/or practices that have an adverse impact on individuals ages 40 and older in violation of the ADEA and are not, and cannot be, justified by reasonable factors other than age.

95. Defendants have maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

96. As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiff and the collective have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

97. The foregoing policies, patterns, and/or practices have an unlawful disparate impact on employees and prospective employees ages 40 and older in violation of by 29 U.S.C. § 623(a)(2).

98. Plaintiff requests relief as hereinafter described.

## THIRD COUNT
### Breach of Contract

99. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

100. An employment contract, for a three year period, existed between Plaintiff and Defendant.

101. Plaintiff performed its employment duties in an exemplary fashion.

102. Defendant terminated Plaintiff before the three years indicated in the contract was over thus, breaching the contract and failing to perform its side.

103. Defendant's failure to perform and carry out the contract as negotiated for resulted in damages to Plaintiff.

### FOURTH COUNT
### Wrongful Discharge

104. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

105. Defendant wrongfully terminated Plaintiff and thus the contract of hiring was broken and Defendant is liable to Plaintiff for damages arising from this breach.

### FIFTH COUNT
### Fiduciary Breaching Duty

106. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

107. Defendant had a fiduciary relationship with Plaintiff as it was Plaintiff's employer and Plaintiff was not independently contracted or an at will employee.

108. Defendant injured Plaintiff and acted contrary to the interests of Plaintiff, to whom he owed a duty of loyalty to.

109. Damages were directly caused by Defendant's misconduct and thus, Defendant is liable for those damages.

### SIXTH COUNT
### Contract Performance Interfered with by Outsider

110. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

111. Defendant intentionally interfered with the performance of Plaintiff's employment contract with Porsche.

112. Defendant is in privity with Porsche who owed a fiduciary duty to Plaintiff as its

employer.

113. Defendant's interference was done without legal or social justification.

114. Defendant's interference has caused Plaintiff damages and because of this, Defendant is liable to Plaintiff for its losses.

## SEVENTH COUNT
### Intentional Interference with Contractual Relationship

115. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

116. Defendant had knowledge of the employment contract between Porsche and Plaintiff.

117. Without reasonable justification or excuse, Defendant induced Porsche to break the employment contract by providing them with negative information about Plaintiff

118. By reason of Defendant's inducement, Plaintiff has sustained damages.

## EIGHTH COUNT
### Intentional Interference with Prospective Economic Advantage

119. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

120. There was a clear business relationship between Plaintiff and Porsche.

121. Defendant interfered with this business relationship by speaking ill about Plaintiff's business performance.

122. Defendant acted with the sole purpose of harming Plaintiff and used dishonest, unfair and improper means.

123. The harm done by Defendant caused injury to the relationship between Porsche and Plaintiff.

## NINETH COUNT
### Malicious Interference with Contract Rights

124. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

125. Defendant had knowledge of the employment agreement between Plaintiff and Porsche.

126. Without reasonable justification or excuse Defendant induced Porsche to break the agreement by providing Porsche with negative information about Plaintiff's employment practices.

127. Plaintiff sustained damages because of this inducement and thus, Defendant is liable to Plaintiff for those damages.

### TENTH COUNT
**Malicious Interference with Prospective Economic Advantage**

128. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

129. There was a clear business relationship between Porsche and Plaintiff.

130. Defendant interfered with that business relationship by purposefully putting forward undesirable and untrue facts about Plaintiff's employment practices.

131. Defendant acted with the sole purpose of harming Plaintiff by using dishonest, unfair and improper means.

132. Defendant's dishonest and malicious means caused injury to Plaintiff's relationship with Porsche.

### ELEVENTH COUNT
**Injurious Falsehood**

133. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

134. Defendant uttered untrue statements about Plaintiff to higher-ups at Porsche.

135. Upon information and belief, these statements included but are not limited to telling Porsche that there was pending litigation between the two parties when there was not which would make it seem that Plaintiff lied to Porsche about this fact.

136. Upon information and belief, Pepe told Porsche that Gallagher had no integrity and

could not be trusted as Porsche's representative.

137. Upon information and belief, Pepe told Porsche that Gallagher made his customers uncomfortable.

138. Upon information and belief, Pepe told Porsche that Gallagher was costing Pepe's dealership business because Gallagher was a poor Pre Owned Manager.

139. Defendant uttered these statements with ill will and deliberate falsifications.

140. These statements were about Plaintiff's business and employment.

141. The statements induced Porsche to continue dealing with Plaintiff and denied Plaintiff of the continuance of his economic advantages from his employment with Porsche.

### TWELVTH COUNT
**Libel Per Se**

142. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

143. Defendant publicized a statement about Plaintiff by disclosing it to the employees of Porsche, Mercedes Benz and others.

144. Upon information and belief, these statements included but are not limited to telling Porsche that there was pending litigation between the two parties when there was not which would make it seem that Plaintiff lied to Porsche about this fact.

145. Upon information and belief, Pepe told Porsche that Gallagher had no integrity and could not be trusted as Porsche's representative.

146. Upon information and belief, Pepe told Porsche that Gallagher made his customers uncomfortable.

147. Upon information and belief, Pepe told Porsche that Gallagher was costing Pepe's dealership business because Gallagher was a poor Pre Owned Manager.

148. The statements alleged about Plaintiff to Porsche and others were both false and

defamatory.

149.  Defendant uttered these statements with ill will and deliberate falsifications.

**WHEREFORE**, Plaintiffs demands judgment against Defendants as follows:

i.  For actual damages;

ii.  For compensatory damages;

iii.  For consequential damages;

iv.  For punitive damages;

v.  For punitive damages;

vi.  For attorney's fees;

vii.  Cost of suit;

viii.  Certification of the case as a class and/or collective action on behalf of the proposed class;

ix.  Designation of Plaintiff Joseph Gallagher as representative of the class;

x.  Designation of Representative Plaintiff's counsel of record as class counsel;

xi.  A declaratory judgment that the practices complained of herein are unlawful and violate 29 U.S.C. §§ 621, *et seq.*;

xii.  A preliminary and permanent injunction against Defendants and its Partners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiff and the class because of their age;

xiii.  An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees

regardless of age, and that it eradicate the effects of their past and present unlawful employment practices;

xiv.   An order appointing a monitor to ensure that Defendants comply with the injunction provisions of any decree that the Court orders;

xv.   An order retaining jurisdiction over this action to ensure that Defendants comply with such a decree;

xvi.   An order for front pay benefits to Plaintiff and class and collective members;

xvii.   Back pay (including interest and benefits) for Plaintiff and class and collective members;

xviii.   All damages sustained as a result of Defendants' conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

xix.   Liquidated damages;

xx.   Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

xxi.   For prejudgment interest and post-judgment interest; and

xxii.   For any other relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues subject to trial.

**ABOYOUN, HELLER & DOBBS, L.L.C.**
Attorneys for Plaintiff

By:_____
            Seth L. Dobbs
            Attorney ID:  039942009

Dated:  April 18, 2018

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Seth L. Dobbs, Esq. is hereby designated as trial counsel for the Plaintiffs in the above matter.

ABOYOUN, HELLER & DOBBS, L.L.C.
Attorneys for Plaintiff

By:_____
Seth L. Dobbs
Attorney ID:  039942009

Dated:  April 18, 2018

## DEMAND FOR PRESERVATION OF EVIDENCE

All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiffs' cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including but to limited to electronic data storage, digital images, computer images, searchable data, emails, memos, text messages, maintenance records and any other information and/or data, and/or documents which may be relevant to any claim or defense in this litigation.

Plaintiffs specifically demands that Defendants preserve any and all evidence pertaining to their phone records. Failure to do so will result in a separate claim for spoliation of evidence, and appropriate adverse inferences.

ABOYOUN, HELLER & DOBBS, L.L.C.
Attorneys for Plaintiff

By:_____
Seth L. Dobbs
Attorney ID:  039942009

Dated:  April 18, 2018

## **RESERVATION OF RIGHTS**

Defendant reserves the right to file such specific amendments and/or additional claims as are applicable hereinafter in this action and/or as the same are subsequently discovered and identified.

**ABOYOUN, HELLER & DOBBS, L.L.C.**
Attorneys for Plaintiff

By:_____
Seth L. Dobbs
Attorney ID:  039942009

Dated:  April 18, 2018

## **CERTIFICATION**

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy is not now the subject of any other action pending in any other court, or of a pending arbitration proceedings, to the best of my knowledge and belief. Also, to the best of my belief, no other action or arbitration proceeding is contemplated.  Further, other than the parties set forth in this pleading and previous pleadings, at the present time I know of no other parties that should be joined in the within action.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**ABOYOUN, HELLER & DOBBS, L.L.C.**
Attorneys for Plaintiff

By:_____
Seth L. Dobbs
Attorney ID:  039942009

Dated:  April 18, 2018