UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOSEPH GALLAGHER, individually and on :
behalf of others similarly situated, :
                Plaintiff, :
:
v. : **OPINION AND ORDER**
:
PEPE AUTO GROUP; MERCEDES BENZ OF : 18 CV 3433 (VB)
NEW ROCHELLE; JOSEPH PEPE, :
individually; GENE PEPE, individually; :
ROBERT PEPE, individually; and SALVATORE :
PEPE, individually, :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiff brings collective action claims against defendants Pepe Auto Group, Mercedes Benz of New Rochelle ("MBNR"), Joseph Pepe, Gene Pepe, Robert Pepe, and Salvatore Pepe for age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), and the New York State Human Rights Law ("NYSHRL"). Plaintiff also brings individual state law claims for (i) breach of contract, (ii) wrongful discharge, (iii) breach of fiduciary duty, (iv) intentional interference with contractual relationship, (v) intentional interference with prospective economic advantage, (vi) injurious falsehood, and (vii) libel per se.

        Now pending is defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) or, in the alternative, to compel arbitration and stay the action pending arbitration pursuant to the Federal Arbitration Act ("FAA"). (Doc. #19).

1

For the reasons set forth below, the motion to dismiss is DENIED WITHOUT PREJUDICE, and the motion to compel arbitration and stay the action pending arbitration is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

The following factual background is drawn from the amended complaint and the parties' submissions in support of and in opposition to the pending motions.

I. <u>Employment Agreement</u>

In July 2015, Joseph Pepe ("Pepe"), Pepe Auto Group's chief operating officer, offered plaintiff the position of general manager at Pepe's MBNR store. The same month, plaintiff entered into a three-year employment agreement (the "Employment Agreement") with MBNR to work as the general manager. The Employment Agreement contains an arbitration clause, which states: "Any dispute under this Agreement shall be resolved by binding arbitration." (Doc. #20 ("Kozak Decl.") Ex. C ("Employment Agreement") § 7.01).

II. <u>Termination from MBNR</u>

Plaintiff alleges in 2017, around two years after plaintiff began working for MBNR, Pepe called plaintiff into his office to terminate plaintiff. Pepe told plaintiff, "it just isn't working out." (Doc. #18 ("Am. Compl.") ¶ 17). According to plaintiff, he "never received any of the required written performance reviews, let alone one that identified any areas of unsatisfactory performance or recommendations of improvements that he could undertake." (Id. ¶ 19). Plaintiff alleges, "[t]o the contrary, [plaintiff] always received praise for his performance by Pepe and MBNR." (Id. ¶ 20). Plaintiff also alleges he never received any written notice

articulating the reasons for his termination, which plaintiff alleges the Employment Agreement required.

According to plaintiff, defendants terminated him because of his age.  Plaintiff alleges in support that (i) he was fifty-one (presumably at the time of his termination, although the amended complaint does not specify), and among the oldest employees at MBNR; (ii) he was qualified for his position, and an experienced and effective employee; (iii) he was terminated without prior discipline; (iv) defendants replaced him with a substantially younger employee; and (v) defendants had a pattern and practice of hiring employees in their twenties and thirties.

Plaintiff alleges at the same time Pepe terminated him, Pepe forced plaintiff to sign a general release.  Plaintiff alleges Pepe misrepresented the terms of the general release in order to induce plaintiff into signing the document, which plaintiff did.

Thereafter, plaintiff sent a letter dated June 6, 2017, to Pepe and MBNR rejecting the terms of the release because, among other reasons, it was improper under the OWBPA.  Plaintiff alleges the release violates the OWBPA because he was not afforded the required time to review the release and the release did not mention plaintiff's statutory time to review the release.

Plaintiff also alleges defendants have engaged in similar acts with respect to other employees, including discriminating against employees on the basis of age and forcing employees to sign similar releases in violation of the OWBPA.

III.     Termination from Porsche

Plaintiff alleges he subsequently obtained new employment with Porsche Cars North America Inc. ("Porsche") as an area pre-owned manager.  Plaintiff's new job required him to visit and work with other car dealerships, including Pepe's Porsche store.

Plaintiff alleges Joseph Pepe called Porsche and said plaintiff "was no longer welcome at Pepe's Porsche store because he was suing Pepe." (Am. Compl. ¶ 49). However, according to plaintiff, there was no pending litigation at that time, making Pepe's statement false. Plaintiff further alleges that to get plaintiff fired, Pepe told Porsche plaintiff "had no integrity"; "could not be trusted as Porsche's representative;" "made [Pepe's] customers uncomfortable"; and "was costing Pepe's dealership business because [plaintiff] was a poor Pre Owned Manager." (Id. ¶¶ 52–54).

Plaintiff alleges that on February 1, 2018, Porsche terminated his employment.

## DISCUSSION

I. <u>Legal Standard</u>[1]

"In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . , the court applies a standard similar to that applicable for a motion for summary judgment." <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003) (internal citation omitted). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." <u>Harrington v. Atl. Sounding Co., Inc.</u>, 602 F.3d 113, 124 (2d Cir. 2010) (citing <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 91–92 (2000)).

II. <u>Motion to Dismiss</u>

Defendants move to compel arbitration "in the event the Court does not dismiss Plaintiff's complaint in its entirety." (Doc. #21 ("Def. Br.") at 13).

---

[1] The Court only addresses defendants' motion to compel arbitration, and therefore only recites the motion to compel standard.

4

"[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (internal quotation omitted). Moreover, some courts have held "[a]rbitrability is a gateway issue" and a court must address the arbitrability of a plaintiff's claims "at the outset of the litigation." Silfee v. Automatic Data Processing, Inc., 696 F. App'x 576, 577 (3d Cir. 2017) (non-precedential opinion) (internal quotation and emphasis omitted) (collecting cases); see also Order at 4, Color–Web, Inc. v. Mitsubishi Heavy Indus. Printing & Packaging Mach., Ltd., 16 Civ. 1435 (Doc. #63) (S.D.N.Y. Sept. 22, 2016) (holding the court would consider the "threshold issue" of arbitrability of plaintiffs' claims before defendants' motion to dismiss, because to do otherwise would be prejudicial to plaintiffs).

The Court therefore addresses defendants' motion to compel arbitration first, and as the Court grants the motion to compel, it does not reach defendants' motion to dismiss.

III. Motion to Compel

Defendants argue the Court should compel arbitration because the parties signed a valid arbitration agreement encompassing plaintiff's claims. Plaintiff disputes only that the claims fall within the scope of the arbitration agreement.

The Court finds plaintiff's ADEA, OWBPA, NYSHRL, breach of contract, wrongful discharge, and breach of fiduciary duty claims fall within the scope of the arbitration agreement, but plaintiff's intentional interference with contractual relationship, intentional interference with prospective economic advantage, injurious falsehood, and libel per se claims ("post-termination claims") do not.

In deciding whether to compel arbitration, a court must determine (i) whether the parties agreed to arbitrate; (ii) if so, the scope of the agreement to arbitrate; (iii) whether Congress

5

intended any federal statutory claims asserted to be nonarbitrable; and (iv) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

The Second Circuit has provided a roadmap for determining whether particular disputes fall within the scope of an arbitration agreement. First, the court "should classify the particular clause as either broad or narrow." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 172 (internal quotation omitted). If the clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2011) (internal quotation and citation omitted). "A collateral matter will generally be ruled beyond [the] purview" of a narrow clause. Id. (internal citation omitted). In contrast, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Id. (internal quotation omitted). Notwithstanding these guidelines, courts are not required "to make the nice determination of exactly where in the range between broad and narrow [an arbitration] clause fits." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 75 (2d Cir. 1997).

Moreover, "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). "If the allegations underlying the claims touch matters covered by the parties'

6

contracts, then those claims must be arbitrated, whatever the legal labels attached to them." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 172 (internal quotation omitted).

The federal policy favoring arbitration "requires [courts] to construe arbitration clauses as broadly as possible." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). "[A] presumption of arbitrability [arises] when the plaintiff has agreed to arbitrate disputes 'arising under' or 'in connection with' an employment agreement." White v. Cantor Fitzgerald, L.P., 393 F. App'x 804, 806 (2d Cir. 2010) (summary order) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998), abrogated on separate grounds by Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015)). Further, "broad arbitration provisions encompass statutory discrimination claims arising out of a putative employment relationship, even if not explicitly stated in the arbitration clause," unless the party contesting arbitration rebuts the presumption of arbitrability. Arshad v. Transp. Sys., Inc., 183 F. Supp. 3d 442, 448 (S.D.N.Y. 2016) (internal citations omitted); see also White v. Cantor Fitzgerald, L.P., 393 F. App'x at 806 (presumption of arbitrability is "rebuttable").

Here, the arbitration agreement, which provides, "Any dispute under this Agreement shall be resolved by binding arbitration," is broad. Therefore, there is a presumption of arbitrability regarding plaintiff's claims that arise under the Employment Agreement. Those claims include plaintiff's discrimination claims under the ADEA, OWBPA, and NYSHRL, as well as plaintiff's claims for breach of contract, wrongful discharge, and breach of fiduciary duty (the "arbitrable claims").

But plaintiff's post-termination claims do not fall under the arbitration clause. They require examination of different evidence and do not require interpretation of or reference to the Employment Agreement. Cf. Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d at 856 (holding

7

claim that defendants tortuously interfered with plaintiff's contractual relationship with one of its officers did not arise under or relate to sales agreement between the parties). Indeed, "[t]here is nothing to indicate that . . . [the parties] could reasonably have expected, or even contemplated, that that clause would extend" to plaintiff's post-termination claims. Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 28 (2d Cir. 1995). The Court also notes defendants do not seem to contest the non-arbitrability of plaintiff's post-termination claims. (See Doc. #25 ("Def. Reply Br.") at 9).

Plaintiff has not offered any evidence to rebut the presumption of arbitrability as to the arbitrable claims. Rather, plaintiff argues (i) the Employment Agreement does not contain provisions relating to termination of employment without cause or employment discrimination claims, and (ii) the Court should not compel arbitration of plaintiff's ADEA, OWBPA, and NYSHRL claims because he did not agree to arbitrate his "class action claims." (Doc. #23 ("Pl. Br.") at 23).

Plaintiff's arguments are meritless. Regarding plaintiff's first argument, as noted above, broad arbitration provisions encompass employment discrimination claims, unless a plaintiff rebuts the presumption of arbitrability. See White v. Cantor Fitzgerald, L.P., 393 F. App'x at 806; Arshad v. Transp. Sys., Inc., 183 F. Supp. 3d at 448. Thus, the Employment Agreement need not contain specific provisions relating to termination of employment to cover plaintiff's claims.

Regarding plaintiff's second argument, although plaintiff refers to "class action claims" in his opposition brief (Pl. Br. at 23) and titled his amended complaint "Class Action Complaint" (Am. Compl. at 1), the Court infers that plaintiff intended to assert collective action claims under 29 U.S.C. § 626(b). Plaintiff's amended complaint does not mention Fed. R. Civ. P. 23 (which

governs class actions), includes a section titled "Collective Action Allegations" (Am. Compl. at 10), and in that section refers to 29 U.S.C. 626(b), which incorporates the "powers, remedies, and procedures provided in section[] . . . 216" (which provides for collective actions).

Either way, plaintiff may not avoid arbitration by pursuing class or collective relief in federal court. Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 665 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999) ("[A] plaintiff . . . who has agreed to arbitrate all claims arising out of her employment may not avoid arbitration by pursuing class claims.").

Accordingly, the Court compels arbitration of plaintiff's ADEA, OWBPA, NYSHRL, breach of contract, wrongful discharge, and breach of fiduciary duty claims.

IV. Stay Pending Arbitration

The Court will stay further proceedings pending arbitration.

"Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d at 856 (internal citations omitted). Moreover, courts stay proceedings when disposition of the arbitrable claims will inform resolution of or dispose of the non-arbitrable claims. See Syncora Guarantee Inc. v. HSBC Mex., S.A., 861 F. Supp. 2d 252, 261 (S.D.N.Y. 2012) (collecting cases).

Plaintiff's arbitrable claims predominate the case. The factual allegations in plaintiff's amended complaint largely relate to plaintiff's arbitrable claims; plaintiff's arbitrable claims are more numerous; and plaintiff's arbitrable claims include his ADEA, OWBPA, and NYSHRL claims, the only claims he brought as collective actions in this Court. Further, disposition of plaintiff's arbitrable claims will inform resolution of plaintiff's post-termination claims since, among other things, plaintiff alleges Pepe told Porsche that plaintiff was a poor employee, "made

9

false and injurious statements to Porsche about [plaintiff's] work ethic, business acumen, integrity, and character," and "made [Pepe's] customers uncomfortable." (Am. Compl. ¶¶ 53, 56).

Accordingly, the Court stays further proceedings pending arbitration.

## CONCLUSION

The motion to dismiss is DENIED WITHOUT PREJUDICE. The motion to compel arbitration is GRANTED as to plaintiff's ADEA, OWBPA, NYSHRL, breach of contract, wrongful discharge, and breach of fiduciary duty claims, and DENIED as to plaintiff's intentional interference with contractual relationship, intentional interference with prospective economic advantage, injurious falsehood, and libel per se claims.

This action is hereby STAYED pending arbitration.

By June 21, 2019, and every ninety days thereafter, the parties shall inform the Court by joint letter of the status of the arbitration. Additionally, within ten days of completion of arbitration, the parties shall provide a joint status report to the Court.

The Clerk is instructed to terminate the motion. (Doc. #19).

Dated: February 21, 2019
      White Plains, NY

                              SO ORDERED:

                              Vincent L. Briccetti
                              United States District Judge